UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
UNITED STATES OF AMERICA      .    Criminal No. 1:08cr179-1
                              .
       vs.                    .    Alexandria, Virginia
                              .    May 13, 2008
TAI SHEN KUO, a/k/a Tai Kuo,  .    10:00 a.m.
a/k/a Kuo Tai Shen,           .
                              .
           Defendant.         .
                              .
. . . . . . . . . .  .
```

TRANSCRIPT OF PRE-INDICTMENT PLEA
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:           W. NEIL HAMMERSTROM, JR., AUSA
                              AARON M. ZEBLEY, AUSA
                              United States Attorney's Office
                              2100 Jamieson Avenue
                              Alexandria, VA 22314


FOR THE DEFENDANT:            PLATO CACHERIS, ESQ.
                              JOHN F. HUNDLEY, ESQ.
                              Trout Cacheris & Janis PLLC
                              1350 Connecticut Avenue, N.W.
                              Suite 300
                              Washington, D.C. 20036


OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
                              U.S. District Court, Fifth Floor
                              401 Courthouse Square
                              Alexandria, VA 22314
                              (703)299-8595



(Pages 1 - 34)



COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

```
 1                      P R O C E E D I N G S

 2                      (Defendant present.)

 3           THE CLERK:  Criminal Case 08-179, United States of

 4   America v. Tai Shen Kuo.  Would counsel please note their

 5   appearances for the record.

 6           MR. ZEBLEY:  Good morning, Your Honor.  Aaron Zebley

 7   and Neil Hammerstrom on behalf of the United States.

 8           THE COURT:  Good morning.

 9           MR. HUNDLEY:  Good morning, Your Honor.  John Hundley

10   and Plato Cacheris on behalf of Mr. Kuo.

11           THE COURT:  Good morning.  This matter comes on for a

12   pre-indictment plea, correct, Mr. Hundley?

13           MR. HUNDLEY:  Correct.

14           THE COURT:  All right.  And Mr. Kuo does not need an

15   interpreter?

16           MR. HUNDLEY:  He does not.

17           THE DEFENDANT:  No, sir.

18           THE COURT:  All right, Mr. Kuo, come up to the

19   lectern.  The clerk will administer an affirmation to you at

20   this time.

21               TAI SHEN KUO, DEFENDANT, AFFIRMED

22           THE COURT:  All right, Mr. Kuo, you have now taken a

23   promise to tell the truth in answering all of the Court's

24   questions.  If you should lie in answering any question this

25   morning, the government could prosecute you for a new and
```

3

1    separate crime called perjury.

2            Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  For the record, what is your full name?

5            THE DEFENDANT:  Tai Shen Kuo.

6            THE COURT:  Are you also known as Tai Kuo and Kuo Tai

7    Shen?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  And, Mr. Kuo, how old are you?

10           THE DEFENDANT:  Fifty-eight, Your Honor.

11           THE COURT:  How much education have you completed?

12           THE DEFENDANT:  I'm a college graduate.

13           THE COURT:  Do you have any problem reading, writing,

14   understanding, or speaking English?

15           THE DEFENDANT:  No, Your Honor.

16           THE COURT:  Are you a United States citizen?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Are you presently on probation or parole

19   from any other criminal case?

20           THE DEFENDANT:  No, Your Honor.

21           THE COURT:  Are you at this time under the care of a

22   doctor for any physical or mental problems?

23           THE DEFENDANT:  No, Your Honor.

24           THE COURT:  Are you at this time taking any

25   medication for any physical or mental problem?

4

1               THE DEFENDANT:  For high blood pressure, Your Honor.

2               THE COURT:  High blood pressure?

3               THE DEFENDANT:  Yes, ma'am.

4               THE COURT:  All right.  Have you had your medicine

5   today?

6               THE DEFENDANT:  No.

7               THE COURT:  When do you normally take the medicine?

8               THE DEFENDANT:  About eleven, twelve o'clock.

9               THE COURT:  So in about two hours?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  All right.  Are you in any respect

12   feeling ill today in any respect?

13              THE DEFENDANT:  No, Your Honor.

14              THE COURT:  Are you at this time under the influence

15   of any alcohol or drugs?

16              THE DEFENDANT:  No, Your Honor.

17              THE COURT:  Mr. Kuo, we have several documents that

18   we need to go over in connection with your plea today.  The

19   first document is called a waiver of indictment, and I see what

20   appears to be your signature and that of both of your

21   attorneys, Mr. Cacheris and Mr. Hundley.  Did you, in fact,

22   sign the waiver of indictment?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Now, before you signed the waiver, did

25   your lawyers explain to you that under the laws and

1    Constitution of the United States, you have an absolute right

2    to require that the federal prosecutors go before a group of

3    people called a federal grand jury with the evidence they've

4    developed concerning your involvement in a conspiracy to

5    deliver national defense information to a foreign government?

6    Do you understand you have that right?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Now, a federal grand jury is made up of

9    anywhere from 16 to 23 ordinary citizens who are brought

10   together on a random basis, and the job of a grand jury is to

11   actually be a kind of reviewing system of potential criminal

12   cases, because what happens in the grand jury, which is a

13   completely secret proceeding, is a federal prosecutor goes into

14   the grand jury room, advises the grand jurors that the

15   prosecutor believes a person may have violated certain federal

16   criminal laws, and then presents evidence to the grand jury

17   supporting that position.

18           If at the end of the presentation, which can take a

19   few hours or a few days or even months sometimes, at least 12

20   members of the grand jury are satisfied that the evidence

21   establishes probable cause to believe that the crime or crimes

22   have been committed by the person, the grand jury will then

23   issue a document called an indictment, and that document is

24   normally how they -- how we start a felony-level prosecution in

25   federal court.

6

1              Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  The grand jury is considered a protector

4    of individual rights because it exists to make sure that a

5    person is not publicly charged with criminal activity without

6    there being a genuine factual basis to support the charge.  Do

7    you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Now, a person can give up his right to

10   that review process, and that would be done by signing a

11   document such as the one in court today, a waiver of

12   indictment.  The word "waiver" in the law means to give

13   something up, so by giving up indictment, that means that you

14   are allowing the prosecutors to come to court today and file

15   this conspiracy charge against you in court this morning

16   without having tested that charge before the grand jury.

17             Do you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And did you understand all of what I've

20   just explained to you before you signed the waiver?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  All right.  Now, other than the written

23   plea agreement that's in court today, has anyone promised or

24   suggested to you that by waiving indictment, you might get a

25   lighter or shorter sentence or more favorable treatment by the

7

1    Court?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Has anyone put any force or pressure on

4    you to waive indictment today?

5           THE DEFENDANT:  No, Your Honor.

6           THE COURT:  All right.  Mr. Hundley, did you and

7    Mr. Cacheris carefully go over this waiver with your client?

8           MR. HUNDLEY:  We did, Your Honor.

9           THE COURT:  And are you satisfied that Mr. Kuo has

10   entered his waiver in a knowing and voluntary fashion?

11          MR. HUNDLEY:  I am.

12          THE COURT:  All right, based upon all these answers

13   to the Court's questions, Mr. Kuo, I'm satisfied that you've

14   entered your waiver in a knowing and voluntary fashion and that

15   you've had the full advice of counsel, so the waiver is

16   accepted, and having accepted the waiver, that allows the

17   United States to file the following charge against you by way

18   of a criminal information, and in this information, it is

19   alleged that beginning in March of 2007 and continuing through

20   on or about February 11, 2008, in Alexandria, Virginia, and

21   elsewhere, that you unlawfully, knowingly, and willfully

22   conspired, confederated, and agreed with others, both known and

23   unknown, to communicate, deliver, and transmit directly and

24   indirectly to a foreign government, that is, the People's

25   Republic of China, and an agent thereof, documents and

8

1    information relating to the national defense of the United

2    States, with the intent or reason to believe that said

3    documents and information were to be used to the injury of the

4    United States or to the advantage of a foreign nation.

5             And then it's further alleged that as an overt act in

6    furtherance of that conspiracy, that on or about September 10,

7    2007, in Alexandria, Virginia, you met with an official of the

8    United States Department of Defense and obtained from him a

9    document containing classified national defense information

10   relating to communications between the United States military

11   and certain foreign nations, and that after that meeting, you

12   retyped the information into a laptop computer in an encrypted

13   format, and then you sent that document to a government

14   official of the People's Republic of China.

15            That's the conspiracy charge that's been filed

16   against you.  Do you understand the charge?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  And to that charge, how do you want to

19   plead, guilty or not guilty?

20            THE DEFENDANT:  Guilty, Your Honor.

21            THE COURT:  All right.  Now, Mr. Kuo, before the

22   Court accepts your guilty plea, I'm going to review with you

23   the written plea agreement you've reached with the United

24   States as well as the facts of the case.  At any point this

25   morning while I'm asking you these questions if you should

9

1    change your mind and decide you don't want to plead guilty, you

2    may withdraw your guilty plea.

3              Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  The plea agreement that was filed in

6    court a few minutes ago is 14 pages long, and again, I see on

7    the 14th page what appears to be your signature with today's

8    date, which is May 13, 2008.  Did you, in fact, sign the plea

9    agreement today?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Now, before signing the plea agreement,

12   did you read it over for yourself word for word?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And have you thoroughly discussed the

15   plea agreement with your lawyers?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Have you asked them all the questions

18   that you have about the agreement?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Have they answered your questions to your

21   satisfaction?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  As you stand in court this morning, do

24   you have any questions whatsoever you want to ask me about the

25   plea agreement?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  And about how long ago did you first see

3     a copy of this plea agreement or a draft of the plea agreement?

4          THE DEFENDANT:  The draft about a week-two weeks ago.

5          THE COURT:  And were changes made to the draft?

6          THE DEFENDANT:  A little, yes.  Yes, Your Honor.

7          THE COURT:  All right.  And you've reviewed all of

8     the changes?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right, I want you to look at page 14.

11     I assume you have the agreement there in front of you, and I

12     want you to look, right above your signature are two sentences

13     I want you to appreciate are actually part of this plea

14     agreement.  They do repeat much of what I just went over, but I

15     want you to see that it's written in the agreement.  Those

16     sentences go, "I have read this plea agreement and carefully

17     reviewed every part of it with my attorney.  I understand this

18     agreement and voluntarily agree to it."

19          Do you see those two sentences?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And are they completely true?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Mr. Kuo, by telling the Court that you've

24     read the entire plea agreement and discussed it thoroughly with

25     counsel and that you understand it and are voluntarily agreeing

1    to it, that means you will be bound or held responsible for

2    everything within this 14-page document even if I don't go over

3    every paragraph or page of the plea agreement with you in court

4    today.  Do you understand that?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  And the reason for that result is that

7    the plea agreement is really a written contract between you and

8    the United States government, and when a person signs a written

9    contract after he's had a chance to review it carefully and to

10   go over it with his lawyers and he understands it when he signs

11   it and signs it voluntarily, then that whole document becomes a

12   binding legal document, and you can't just come back to court

13   in a couple of weeks and say, well, I changed my mind.  I don't

14   like what's on page 3.  I want to change it.

15          It's too late.  Do you understand that?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Other than the 14-page plea agreement

18   that we're talking about right now, do you have any side deals

19   or side understandings with anybody from the federal

20   government, whether the Department of Defense, the Federal

21   Bureau of Investigation, the U.S. Attorney's Office, or anybody

22   else?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Mr. Hundley, is that correct?

25          MR. HUNDLEY:  That's correct, Your Honor.

12

1          THE COURT:  All right, let's turn then to page 1,

2   paragraph 1, where it says as part of the plea agreement, you

3   have agreed to waive indictment, which you have just done, and

4   enter a guilty plea to the criminal information I just

5   summarized for you.

6          Now, do you understand, Mr. Kuo, that the crime of

7   conspiracy to deliver national defense information to a foreign

8   government is a felony offense that carries a possible maximum

9   penalty of life imprisonment, a possible maximum fine of

10  $250,000, there's an automatic special assessment of $100, and

11  at least five -- I'm sorry, and up to five years of supervised

12  release?  Do you understand those penalty provisions?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Now, supervised release does not begin

15  until the prison portion of the sentence has been served.  When

16  a person is on supervised release, he is under the control of a

17  federal probation officer, and there may be requirements to do

18  certain things as well as requirements not to do certain

19  things.

20         And the key fact you need to understand is that if

21  you violate any condition of supervised release, the punishment

22  could be being sent back to prison for as long as that period,

23  which could be five years.  Do you understand that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Do you understand that parole is not

1   available in the federal system?  That means whatever term of

2   imprisonment is imposed must be fully served.  Do you

3   understand that?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  When it comes time for sentencing, the

6   Court is going to need to look at several different factors.

7   We first have to look at the Federal Sentencing Guidelines.

8   The guidelines are determined based on two factual decisions.

9   First, the Court has to determine your criminal history.

10           There are six categories of criminal history, each

11  getting a number.  A No. I criminal history would go to

12  somebody who's never been in trouble with the law or who has a

13  very minor criminal record, and then depending upon the

14  criminal history, convictions, probation or parole violations,

15  those types of things, the history score can go up to a level

16  VI, which is the highest and most serious level.

17           Do you understand that?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Then the Court looks at the offense

20  conduct.  Every federal crime has a basic number assigned to

21  it, and then depending upon the facts, that number can be

22  raised or lowered.  Those are called sentencing enhancements.

23           Factors that could increase the score could be such

24  things as the number of classified documents that were involved

25  in the case.  Obviously, the more documents, the higher the

1    score is going to be.  Whether there was an abuse of a position

2    of trust, the degree to which national security may have been

3    injured, if you were receiving any monetary reward, those are

4    the types of factors that may increase the score.

5          At the same time, factors that can decrease the score

6    include such things as full acceptance of responsibility.  If

7    that happens, a defendant can get two and in some cases three

8    points reduced from the offense level.

9          But in the end, we have the two numbers, the criminal

10   history number and the offense level number, and they're put on

11   a one-page chart called the Sentencing Guideline Table, and

12   that establishes an advisory guideline range.  Now, the Court

13   is expected to look at that range but is not required to

14   sentence within it if the Court finds good reasons under

15   section 3553 of Title 18 to sentence otherwise.

16         Do you understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Now, paragraph 5 of your plea agreement

19   explains somewhat what I've just gone over with you.  The one

20   thing that I want to make sure you understand is the government

21   has indicated in paragraph 5 that if you clearly accept full

22   responsibility for the offense, the government will agree to

23   recommend that at the time of sentencing, you be awarded a

24   three-level reduction to the offense level for acceptance of

25   responsibility, but the government has made no other promises

1    or representations about the sentence.

2         Is that your understanding of the plea agreement?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  All right.  Now, I'm going to assume that

5    Mr. Hundley and Mr. Cacheris first of all have discussed

6    guideline sentencing with you.  Have they done that?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Did they show you the one-page chart I

9    was talking about with all the numbers on it, the Sentencing

10   Table?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  All right.  And therefore, I assume

13   they've given you some estimates as to what they think your

14   sentence may be under the guidelines.  Have they done that?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  I want to make sure you understand that

17   no matter what Mr. Hundley and Mr. Cacheris may have told you

18   they think your scores may come out to be for guideline

19   purposes or what type of an ultimate sentence they think you

20   may get because of the factors under 3553, and for that matter,

21   if the prosecutors or any of the government agents or anybody

22   at the Department of Defense have given you some estimates as

23   to what kind of punishment they think you will get, I want to

24   make sure you understand none of those discussions in any

25   respect bind or limit the probation officer who prepares the

1    pre-sentence report or this Court when it goes to sentence you.

2           Do you understand that?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  And so if at the sentencing hearing the

5    Court uses guideline scores that are different from what you're

6    expecting or hoping for or imposes a sentence on you that is

7    different from what you are expecting or hoping for, that will

8    not give you a basis to withdraw your guilty plea.  Do you

9    understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Normally, a defendant in a criminal case

12   has an automatic right to appeal the sentence imposed on him.

13   All he has to do is file literally a two-sentence notice of

14   appeal with the Clerk of Court just saying, "I want to appeal

15   my sentence," that's actually one sentence, and he will get an

16   appeal, but under paragraph 6 of your plea agreement, and this

17   is on page 3, the second sentence that begins with the

18   word "nonetheless," as part of this plea agreement, you are

19   knowingly waiving -- again, that means giving up -- your right

20   to appeal both your conviction for this conspiracy as well as

21   any sentence as long as the sentence is not greater than the

22   statutory maximum.

23          That means as long as the sentence imposed is not

24   greater than life imprisonment followed by five years of

25   supervised release and the fine is not greater than $250,000

1    and the special assessment is not greater than $100, you cannot

2    appeal that sentence for any reason.

3            Do you understand that?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  In exchange for your guilty plea to the

6    criminal information, the United States in paragraph 10 of the

7    plea agreement -- this is on page 5 -- has agreed it will not

8    further prosecute you for the specific activity described in

9    the information and statement of facts.  Now, paragraph 10 does

10   not protect you from being prosecuted first of all in any other

11   district, so if you were involved in the District of

12   Columbia -- I'm sorry, is there something further?

13           MR. HAMMERSTROM:  Yes, Your Honor.

14           MR. ZEBLEY:  We actually ended up modifying slightly

15   paragraph 10 from the copy that was sent up to chambers

16   yesterday.  The immunity actually now covers the entire United

17   States.  We eliminated the limitation to EDVA.

18           THE COURT:  Sorry, it says the United States will

19   not.

20           MR. ZEBLEY:  Yes, Your Honor.

21           THE COURT:  All right, I'm sorry.  So anyplace in the

22   country, the federal authorities will not prosecute you for the

23   specific conduct described in the information or statement of

24   facts, but, for example, if you were involved in getting

25   national security information and sending it to some other

1    country or if you were involved in any other type of criminal

2    activity, tax evasion or something like that, you don't have

3    immunity from prosecution for those offenses.

4            Do you understand that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  You've agreed in paragraph 11

7    to cooperate with the United States.  That cooperation is

8    described in more detail in subsections (a) through (g) but

9    includes among other things your testifying truthfully and

10   completely at any grand juries, trials, or other proceedings;

11   your being reasonably available for debriefings and pretrial

12   conferences with government agents and prosecutors; and your

13   providing documents or other materials to the government for

14   its use in any further investigations.

15           Do you understand that?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  In paragraph 12, the government has

18   agreed it will not use against you to either increase your

19   sentence or to bring a new prosecution any completely truthful

20   information you provide under paragraph 11.  Do you understand

21   that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Now, most defendants who cooperate with

24   the government do so with the hope that the cooperation will

25   result in some lessening of the punishment.  That issue is

19

1    addressed in paragraph 14 of the plea agreement.

2              There are two ways in which cooperation can result in

3    some reduction to the punishment.  The first would be if the

4    government filed a motion at the sentencing hearing under 5K1.1

5    of the guidelines asking the Court to sentence below the

6    guideline range because the defendant has provided substantial

7    assistance.  The other way in which a sentence can be affected

8    by cooperation is after the sentence has been imposed, so the

9    person is now usually in custody, serving the sentence, if the

10   government files a Rule 35(b) motion, which would ask the Court

11   to reduce an already imposed sentence again because of

12   cooperation.

13             What paragraph 14 makes clear is that the United

14   States has not promised that they will file either of those

15   motions even if you've cooperated with the government.  Do you

16   understand that?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And so that means that even if you've sat

19   down with the agents and given them information, even if you've

20   testified in the grand jury, if the United States does not feel

21   that you've told everything or doesn't think it helped them in

22   any respect and they fail to file one of these motions, that is

23   not a violation of the plea agreement, and it will not give you

24   a basis to withdraw your guilty plea.

25             Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Moreover, the Court is not bound by

3    anything in paragraph 14, so even if, for example, the United

4    States filed a motion under Rule 35(b) to reduce your sentence,

5    and let's say they asked the Court to reduce your sentence by

6    50 percent and I felt given all the facts that only a 25

7    percent reduction was proper, if that were the Court's

8    decision, that would not violate the plea agreement, and it

9    would not give you a basis to withdraw your guilty plea.

10          Do you understand that?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  As part of this plea agreement, you have

13   also agreed in paragraph 15 that you have agreed to forfeit up

14   to $40,000 in United States currency.  Do you understand that's

15   part of the agreement?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  You have also agreed under paragraph 17

18   to several very specific nondisclosure elements of this

19   agreement.  These include among other things your agreeing

20   never to divulge, publish, or reveal in any respect any

21   classified information; you've agreed that if you should at any

22   point participate as either an author or a contributor to the

23   creation of any book, writing, article, film, etc., that you

24   will be required to get pre-publication approval from the DOD;

25   and you obviously in the other portions of (c) and (d) have

1 also agreed to other restrictions, all requiring that you have

2 proper clearance from DOD.

3      Do you understand that?

4      THE DEFENDANT:  Yes, Your Honor.

5      THE COURT:  And in paragraph 18, you've agreed to

6 assign any profits or proceeds from publicity.  Do you

7 understand that as well?

8      THE DEFENDANT:  Yes, Your Honor.

9      THE COURT:  You'd be assigning those profits or

10 proceeds to the United States government.  Do you understand

11 that?

12      THE DEFENDANT:  Yes, Your Honor.

13      THE COURT:  In paragraph 19, you've agreed that you

14 will have no contact with any foreign government or agents

15 thereof except with the express permission of the Department of

16 Defense, and you shall not seek or accept personally or through

17 another person or entity any benefit from such foreign

18 government or agent thereof.

19      Do you understand that?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  It does indicate further in that

22 paragraph that you may have contact with a foreign government

23 or agents thereof for the purpose of conducting a lawful

24 business transaction related to a bona fide and legitimate

25 business, provided that you have given such notice to the DOD

22

1  in advance and that you get permission from the DOD if certain

2  types of contacts are part of that.

3          Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  Have you had enough time to

6  explain everything you know about this case to Mr. Hundley and

7  Mr. Cacheris?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Have your lawyers explained to you the

10 nature of this conspiracy charge and any ways in which you

11 could possibly defend yourself against the charge?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Are you fully satisfied with the way in

14 which your lawyers have worked for you in this case?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And do you understand, Mr. Kuo, that you

17 still at this time have a right to plead not guilty and to go

18 to trial on the charge?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And if you did go to trial, then the

21 government would have the burden of proving you guilty.  In

22 order for you to be found guilty at trial, the government must

23 prove your guilt beyond a reasonable doubt.  Do you understand

24 that?

25         THE DEFENDANT:  Yes, Your Honor.

23

1          THE COURT:  And to do that specifically, they have to

2    prove each and every one of the essential elements of the

3    offense beyond a reasonable doubt.  So they first of all have

4    to prove that between March of 2007 and February 11 of 2008,

5    you were part of an agreement, because a conspiracy is

6    basically an agreement between two or more people to do

7    something the law forbids.

8          So they have to prove that during that time period,

9    you and at least one other person came to an agreement, and the

10   agreement was to communicate, deliver, or transmit to a foreign

11   government, in this case the People's Republic of China,

12   documents and information relating to the national defense,

13   with the intent of either injuring the United States or

14   allowing the foreign nation to have an advantage.

15         So that's what they have to prove, that you knowingly

16   and intentionally were part of that agreement.  Do you

17   understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And they have to prove knowing and

20   intentional activity.  That means not -- that you acted not by

21   an accident or mistake or other innocent reason.  Do you

22   understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And they have to show that at least one

25   act in furtherance of the conspiracy occurred in Alexandria,

24

1  Virginia, or within the Eastern District of Virginia.  Do you

2  understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And lastly, they have to prove beyond a

5  reasonable doubt that the specific overt act, that is, the

6  incident on September 10, 2007, in Alexandria, where you met

7  with a DOD official, obtained a classified document from the

8  official, and then transmitted it to the People's Republic of

9  China or an agent thereof, they'd have to prove that that

10  happened beyond a reasonable doubt.

11          Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Now, if you pled not guilty and went to

14  trial, there are certain protections a person has at trial that

15  are essentially given up with a guilty plea.  First, you could

16  see the government's witnesses and evidence and test that

17  information through the questions of your lawyer.

18          Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  You could ask the Court to issue

21  subpoenas that would require that either witnesses or physical

22  evidence be brought to the courthouse so you could use that

23  information in your defense at trial.  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And you could testify as a witness at

1    trial.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  However, you could also invoke your Fifth

4    Amendment right against self-incrimination, and you could

5    refuse to testify, and if you made that decision, that decision

6    could not be used as any evidence of guilt.  Do you understand

7    that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  You would have the right to the help of a

10   lawyer throughout all stages of your trial, and if you could

11   not afford to hire a lawyer at your own expense, we would

12   appoint counsel for you at taxpayers' expense.  Do you

13   understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Your trial could be conducted in either

16   of two ways.  First, you could have a trial by a jury.  In that

17   case, 12 ordinary citizens would be randomly brought together

18   to hear your case.  Or you could waive your jury trial rights

19   and have a trial by a judge sitting alone, but in either type

20   of case, whether tried to a jury or tried to a judge, you could

21   not be convicted unless the government proved your guilt beyond

22   a reasonable doubt.

23             Do you understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  If you continued with a not guilty plea,

1    your lawyers could try to attack the prosecution's case, and

2    there are many different ways in which that can be done.  For

3    example, if there were any searches conducted of your

4    residence, your computer, or your home, your office, whatever,

5    there may or may not be defects in the way in which the

6    searches were conducted, and it's possible that evidence might

7    be suppressible.  If you gave a confession, there may be issues

8    about the way in which the confession was taken.

9            There may be issues about the documents involved in

10   the case, whether they truly were classified, whether they

11   truly -- whether you acted with the intent to injure the United

12   States or whether you acted with the intent to give a foreign

13   nation an advantage.  I mean, there are all sorts of different

14   issues that could possibly be raised in your defense.

15           What you need to understand is that by pleading

16   guilty, you're giving up your right to raise those issues.  Do

17   you understand that?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  And lastly, if you pled not guilty and

20   you went to trial and you were found guilty at trial, you could

21   appeal that finding of guilt to a higher-level court.  Again,

22   under the terms of this plea agreement as well as the way the

23   law is structured, if you are found guilty based on a guilty

24   plea, you give up your right to appeal the conviction.

25           Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Other than the written plea agreement

3   that's in court today, has anybody promised or suggested to you

4   that by pleading guilty, you would get a lighter sentence or

5   more favorable treatment by the Court?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Has anyone put any force or pressure on

8   you to plead guilty today?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  All right, Mr. Kuo, the last document we

11   need to review in connection with your plea is the written

12   statement of facts that was just handed up in court.  It's a

13   14-page document, and I see on the last page again what appears

14   to be your signature.

15          Do you remember signing the statement of facts?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  Do you understand that by

18   signing that statement, you're admitting that everything in the

19   preceding 36 numbered paragraphs could have been proven beyond

20   a reasonable doubt if the case went to trial?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  So as I understand it, you do agree that

23   you were part of this conspiracy; is that correct?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  And that during the time

1    period of March 2007 to February 11, 2008, you were living in

2    New Orleans, is that correct?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And you regularly traveled to the

5    People's Republic of China, specifically, Beijing?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  All right.  You had an office in Beijing?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  And how long have you had that office?

10             THE DEFENDANT:  About nine years, Your Honor.

11             THE COURT:  Nine years?  And what was the primary

12   business that you were in?

13             THE DEFENDANT:  Import furniture from China to the

14   United States.

15             THE COURT:  All right.  And it indicates in paragraph

16   2 here that you had taken steps to establish two companies in

17   an effort to obtain subcontracts related to the United States'

18   sale of defense technology to Taiwan.  Is that correct?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  So besides furniture, you were also

21   involved with defense technology?

22             THE DEFENDANT:  We never get a contract yet.

23             THE COURT:  But you were trying to?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  All right.

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And it indicates in paragraph 3 that you

3     maintained a close relationship with a foreign official of the

4     People's Republic of China.

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Is that correct?

7          And did you know that this person was an official of

8     the Chinese government?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And did you provide him with sensitive

11     United States government information that you acquired from

12     Gregg Bergersen?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Now, how did you first meet Bergersen?

15          THE DEFENDANT:  In Taiwan.

16          THE COURT:  And how did you meet him in Taiwan?

17          THE DEFENDANT:  He was introduced by one of the

18     Taiwanese officials.

19          THE COURT:  And what did you understand

20     Mr. Bergersen's job to be?

21          THE DEFENDANT:  Yes.  At that time, he's a Navy IPO

22     C4ISR official.

23          THE COURT:  All right.  And did you learn that he had

24     access to classified information from the Department of

25     Defense?

30

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  And how did you, how did you

3  communicate with the agent from the People's Republic of China?

4          THE DEFENDANT:  Through telephone, e-mail, or

5  personal contact when I traveled to China.

6          THE COURT:  And did that individual give you

7  directions as to what kind of information you were to collect?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And did he actually give you specific

10  descriptions of documents that he wanted you to try to find?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And do you agree that you were paid a

13  total of $50,000 for your services?

14          THE DEFENDANT:  Yes, Your Honor.  Yes, Your Honor.

15          THE COURT:  Now, it says, unless I'm misreading

16  something, that between 2001 and February 11 of 2008, the PR

17  official paid you a total of $50,000 for your services.  The

18  conspiracy we're talking about here is alleged to have started

19  in March of 2007.  Someone needs to explain the discrepancy to

20  me.

21          MR. ZEBLEY:  The allegation in the criminal

22  information we limited to when national defense information

23  became part of the, the conspiracy.  The period of time for

24  which Mr. Kuo was receiving payments going back to 2001

25  predates when national defense information became part of this,

1    but he was still gathering information and passing it on to the

2    official beginning in 2001.

3            THE COURT:  So what kind of information were you

4    providing in 2001 and 2002?

5            THE DEFENDANT:  Usually nonclassified.  Like, for

6    instance, the report of DOD to Congress on the status of the

7    People's Republic of China Army, but it's nonclassified stuff.

8    It's public.

9            THE COURT:  So it could have been obtained by reading

10   the Congressional Record or something like that?

11           THE DEFENDANT:  Yes, ma'am.  Yes, Your Honor, yes.

12           THE COURT:  And the request for the classified

13   information didn't begin until March of 2007?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  All right.  And were you paying Bergersen

16   for his information?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  And how were you paying him?

19           THE DEFENDANT:  Cash, Your Honor.

20           THE COURT:  And did he ask for the cash?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  You offered it to him?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Um-hum.  And did you understand that it

25   was against the law to do what you were doing?

32

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  All right.  Now, it indicates that -- do
 3    you agree that you would meet Bergersen sometimes in Las Vegas?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  Okay.  And also in Charleston, South
 6    Carolina?
 7              THE DEFENDANT:  Yes, Your Honor.
 8              THE COURT:  Is there anything whatsoever in this
 9    detailed statement of facts that you disagree with?
10              THE DEFENDANT:  No, Your Honor.
11              THE COURT:  Do you understand that if the Court
12    accepts the statement of facts and accepts your guilty plea,
13    you'll be found guilty today, there'll be no further trial, and
14    this will end the case in terms of the finding of guilt?  Do
15    you understand that?
16              THE DEFENDANT:  Yes, Your Honor.
17              THE COURT:  Do you claim in any respect that you are
18    innocent of the charge in this conspiracy?
19              THE DEFENDANT:  No, Your Honor.
20              THE COURT:  How then do you plead, guilty or not
21    guilty?
22              THE DEFENDANT:  Guilty, Your Honor.
23              THE COURT:  All right.  Mr. Hundley, have you had
24    enough time to carefully go over this guilty plea and the facts
25    of the case with your client?
```

1          MR. HUNDLEY:  We have, Your Honor.

2          THE COURT:  Are you and Mr. Cacheris fully satisfied

3    that the defendant is entering this guilty plea in a knowing

4    and voluntary fashion?

5          MR. HUNDLEY:  Yes, Your Honor.

6          THE COURT:  And are you satisfied that the plea of

7    guilt fully accords with your understanding of the facts and

8    circumstances?

9          MR. HUNDLEY:  It does, Your Honor.

10         THE COURT:  All right, Mr. Kuo, based upon your

11   answers to the Court's questions, I'm satisfied that you've

12   entered your guilty plea today knowingly and voluntarily and

13   with the full advice of extremely competent counsel and that

14   the written statement of facts, all of which the Court accepts

15   as part of this record, establishes your guilt beyond a

16   reasonable doubt.

17         We need therefore, now having found you guilty, to

18   set this case for sentencing, and we're actually into the

19   August time frame at this point.  How is Friday, August 8, for

20   everybody?  Does that work?

21         MR. ZEBLEY:  That's fine for the government, Your

22   Honor.

23         MR. HUNDLEY:  That's fine, Your Honor.

24         THE COURT:  All right, that will be at nine o'clock.

25         Mr. Kuo, you'll be visited in your cell by a federal

34

1    probation officer who will be conducting a background

2    investigation.  Your full cooperation with that officer is to

3    your advantage.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Is there anything further on this case?

6              MR. ZEBLEY:  Nothing, Your Honor.

7              THE COURT:  No?

8              MR. HUNDLEY:  Nothing, Your Honor.

9              THE COURT:  Then the defendant is remanded, and we'll

10   recess court for the day.  Thank you.

11                        (Which were all the proceedings

12                         had at this time.)

13

14              CERTIFICATE OF THE REPORTER

15      I certify that the foregoing is a correct transcript of

16   the record of proceedings in the above-entitled matter.

17

18

19   _____/s/_____

20                        Anneliese J. Thomson

21

22

23

24

25

Anneliese J. Thomson OCR-USDC/EDVA (703)299-8595