1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:08cr179-1 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | August 8, 2008 |
| TAI SHEN KUO, a/k/a Tai Kuo, a/k/a Kuo Tai Shen, | . | 9:41 a.m. |
| | . | |
| Defendant. | . | |
| | . | |

. . . . . . . . . . . .

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:        W. NEIL HAMMERSTROM, JR., AUSA
                          AARON M. ZEBLEY, AUSA
                          RYAN FAHEY, SAUSA
                          United States Attorney's Office
                          2100 Jamieson Avenue
                          Alexandria, VA 22314


FOR THE DEFENDANT:         PLATO CACHERIS, ESQ.
                          JOHN F. HUNDLEY, ESQ.
                          Trout Cacheris & Janis PLLC
                          1350 Connecticut Avenue, N.W.
                          Suite 300
                          Washington, D.C. 20036


OFFICIAL COURT REPORTER:   ANNELIESE J. THOMSON, RDR, CRR
                          U.S. District Court, Fifth Floor
                          401 Courthouse Square
                          Alexandria, VA 22314
                          (703)299-8595


(Pages 1 - 16)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

P R O C E E D I N G S

(Defendant present.)

THE CLERK: Criminal Case 08-179, United States of America v. Tai Shen Kuo. Will counsel please note their appearances for the record.

MR. ZEBLEY: Good morning, Your Honor. Aaron Zebley, Neil Hammerstrom, and Ryan Fahey on behalf of the United States.

THE COURT: Good morning.

MR. HUNDLEY: Good morning, Your Honor. John Hundley and Plato Cacheris on behalf of Mr. Kuo.

THE COURT: All right, this matter comes on for sentencing. Mr. Hundley, have you and Mr. Cacheris had enough time to thoroughly go over the pre-sentence report yourselves and with your client?

MR. HUNDLEY: We have, Your Honor.

THE COURT: Are there any factual corrections, changes, additions, deletions -- I know there are some guideline issues, but, I mean, any factual changes you want made to the report?

MR. HUNDLEY: No, Your Honor.

THE COURT: All right. Now, as you know, the Probation Office calculated the offense level here as a level 36. Your client has a criminal history of I. That establishes a guideline range of 188 to 235 months. There's a

3

1  five-year period of supervised release, a fine range of 20,000
2  to 200,000 dollars, and a $100 special assessment.  Correct?
3              MR. HUNDLEY:  Correct.  And the special assessment
4  has been paid, Your Honor.
5              THE COURT:  All right.  You have objected to a
6  two-point increase to the offense level for having an
7  aggravating role in the offense, and you've also requested that
8  the Court downwardly depart six levels, as it did in the
9  *Bergersen* case, which is a companion case, correct?
10             MR. HUNDLEY:  Correct, Your Honor.
11             THE COURT:  All right.  And the government has
12 opposed those two adjustments, correct, Mr. Zebley?
13             MR. ZEBLEY:  That's correct, Your Honor.
14             THE COURT:  All right.  Mr. Hundley, do you want to
15 respond to the government's position in any respect?  I mean,
16 I've read the affirmative briefs, so I don't need to have you
17 repeat the information that's in them.
18             MR. HUNDLEY:  Okay.  To respond to the --
19             THE COURT:  To the opposition.
20             MR. HUNDLEY:  To the reply brief that was most
21 recently filed?
22             THE COURT:  Yeah.
23             MR. HUNDLEY:  We don't think it changes anything,
24 Your Honor.  What they've essentially done in their reply brief
25 with respect to the downward departure issue is they have gone

4

1  back to the, two of the disclosures to which Mr. Kuo has
2  admitted that he made and pointed out what they're calling
3  eight statements or facts, which I essentially take to mean
4  that they went through each sentence of those disclosures and
5  said in addition to the two that were considered in the under
6  seal pleading, we have these eight other facts or statements
7  that could be classified or have been classified at the Secret
8  level that hasn't been assessed by PATCOM yet.
9           We don't think that those facts are likely to change
10 the threat assessment in the future.  The facts out of those
11 documents, we're dealing with the same issues that PATCOM has
12 already looked at, this one program.  The -- some of the facts
13 come out of the same disclosure that PATCOM has already looked
14 at, the two incidents there or the two facts that they have
15 said were likely to cause little harm.  So we don't think that
16 it changes anything, and it's not going to change anything once
17 the threat assessment is complete.
18          Now, I suppose an alternative course for the Court to
19 consider is if you're inclined to agree with the government
20 that this may be a preliminary and give us an opportunity to
21 complete the threat assessment is to continue Mr. Kuo's
22 sentencing until such time as that assessment has been
23 completed and perhaps order the government to have it completed
24 by a date certain, because we do believe that that is a crucial
25 factor to how you're going to fix Mr. Kuo's sentence.

1           THE COURT:  Well, but you know first of all that that
2   commentary to the guideline about the threat assessment, it
3   simply says that if the Court finds that there's, you know,
4   minimal or no real damage or threat of damage to the national
5   security or the other factors, the Court has then the
6   discretion and should consider whether a downward departure is
7   appropriate.  It's still totally discretionary with the Court.
8           MR. HUNDLEY:  Of course, Your Honor.
9           THE COURT:  Ultimately, the Court's job is to decide
10  whether or not -- what is an appropriate sentence.  I mean, in
11  the post-*Gall* era, you know, the final decision of the Court is
12  what is the right sentence given a person's background, given
13  all the facts of the case, given the person's role in the
14  offense, etc.
15          I understand your position.  As you know, the
16  six-point departure or the six-point downward adjustment that I
17  used in *Bergesen* was opposed by the government, they were not
18  in favor of that, but I felt in his case it was appropriate.  I
19  do not find it is appropriate in your client's case because I
20  think, you know, your client is at a completely different level
21  in this overall offense.
22          And for the same reason, your objection about the
23  two-point increase for role in the offense is also overruled.
24  There is no question in my mind that Ms. Kang would never have
25  been involved in this case but for your client, that she

6

clearly was at his direction and control, was not an independent actor, and quite frankly, Bergersen would not be in his -- the position he's in, either, were it not for your client.

So I think the guidelines as developed in the pre-sentence report are appropriate for this case, and I will be using those guidelines as the, you know, the guideline factor in this case will be that range of 188 to 235 months, and obviously, in the post-*Gall* era, we can hear any argument you want to make under 3553.

MR. HUNDLEY: Yes, Your Honor. Would you like me to proceed first, or do you want to hear from the government first?

THE COURT: We'll let the government go first.

MR. HUNDLEY: Thank you.

THE COURT: Mr. Zebley?

MR. ZEBLEY: Your Honor's ruling abbreviated my argument substantially, and I'll skip right to the 3553 factors, Your Honor. Clearly, the most significant 3553 factor in this case is the seriousness of the offense. It doesn't really require much elaboration. Quite simply, the defendant has been convicted of espionage, which is one of the most serious offenses set forth in the United States Code.

The defendant knowingly transmitted classified national defense information to a foreign government. That's

7

1  what happened in this case.  When he did it, he had reason to
2  believe that the information was to be used to the advantage of
3  a foreign government or to the injury of the United States.
4       The defendant's crime makes necessary a sentence of
5  188 months.  188 months is a just sentence, will promote
6  respect for the law, and will generally deter espionage, Your
7  Honor.
8       THE COURT:  Thank you.
9       Mr. Hundley?
10      MR. HUNDLEY:  Your Honor, we would certainly submit
11 that the sentencing factors set forth in 3553(a) would warrant
12 a sentence below the advisory guideline range which Your Honor
13 has now fixed at 188 to 235 months.  As Your Honor knows, in
14 the post-*Gall* era, what you want to do is fix a sentence that
15 is sufficient but not greater than necessary to comply with the
16 goals of sentencing, and we believe one below that range would
17 certainly be sufficient.
18      But for this instant matter, Mr. Kuo has never been
19 in trouble before.  In fact, he's lived quite an exemplary
20 life.  As the numerous letters submitted to the Court made
21 clear, he is essentially a very good man who made some
22 disastrous decisions in this case, and he's the first to admit
23 that, and he has admitted that in his version of the offense.
24      He's 58 years old.  He's a hardworking entrepreneur
25 who had an unyielding desire to succeed from his youth in

8

1  Taiwan until he came to the United States on a tennis
2  scholarship to Nicholls State, graduated, and immediately began
3  forming his own business, which he started from the ground up
4  and grew into the successful business that it was prior to his
5  arrest in this matter.
6        His actions have devastated and disgraced his once
7  proud family.  His wife is now contemplating divorce.  His
8  daughter with whom he shared a very close relationship refuses
9  all contact with him.  She won't even read his letters.  His
10 extended family as well as the family of his wife has
11 essentially disowned him and will have no contact because of
12 his conduct here.
13       He's lost the admiration and respect of countless
14 friends and colleagues, and he's going to lose his freedom and
15 his rights for a significant period of time and face other
16 future restrictions as set forth in this plea agreement for the
17 rest of his life.  These events in short have exacted a
18 significant emotional and physical toll on Mr. Kuo, and it's
19 going to continue for the rest of his life undoubtedly.
20       He's clearly accepted full responsibility for his
21 actions and has begun to take steps to atone for his
22 misconduct.  He promptly acknowledged his guilt and has agreed
23 to forfeit $40,000 to the United States.  He has agreed to
24 cooperate with the government and has already participated in
25 numerous debriefings, and his cooperation is ongoing.  We hope

9

1   that in the future, a Rule 35 motion will be filed once that
2   cooperation is complete and we'll be back in front of Your
3   Honor to discuss that issue.
4           He fully appreciates the seriousness of his misdeeds
5   and the decisions he made, and as Your Honor has noted, one of
6   the things he regrets most deeply is ever involving Ms. Kang in
7   this matter, and he fully accepts that but for his relationship
8   with her, she never would have been a part of this matter, and
9   that troubles him greatly.
10          Again, we've asked the Court and the Court has ruled
11  with respect to this six-level departure.  However, we do
12  believe Your Honor can still consider the potential sentencing
13  disparities under 3553(a), and we believe that that should be a
14  significant consideration in light of the sentence received by
15  Mr. Bergersen, who did receive the 57-month sentence after the
16  departure, and Ms. Kang, who received an 18-month sentence
17  after a departure.
18          Mr. Kuo certainly appreciates that in the level of
19  culpability amongst those people, he is at the highest level.
20  However, we also believe that that has been accounted for
21  somewhat by the charges to which the various participants
22  agreed to plead guilty, and Mr. Kuo clearly agreeing to the
23  most significant charge, which subjected him to the most severe
24  consequences, Mr. Bergersen at a somewhat lesser charge, and
25  clearly, Ms. Kang, who was undoubtedly the least culpable of

10

1   all by a far margin, the least severe charge.

2           Under the current guideline range of 188 to 235
3   months, Mr. Kuo is facing a sentence that is three to four
4   times more severe than that faced by Mr. Bergersen and 10 to 13
5   times more than Ms. Kang.  Again, we understand that he was the
6   most culpable, but we would submit that a sentence three to
7   four times greater than that received by Mr. Bergersen is a
8   significant disparity and is unwarranted, and we believe that
9   warrants some consideration by the Court in fixing an
10  appropriate sentence here.

11          For all of those reasons, we would submit that there
12  is sufficient consideration to warrant a sentence below the
13  advisory guideline range, Your Honor.

14          THE COURT:  Thank you.

15          MR. HUNDLEY:  Thank you, Your Honor.

16          THE COURT:  All right, Mr. Kuo, come up to the
17  lectern.  Mr. Kuo, this is your chance to say anything you'd
18  like the Court to consider before sentence is imposed.

19          THE DEFENDANT:  Your Honor, I just thank you for
20  giving me the opportunity to express myself, Your Honor.  Your
21  Honor, I don't know how to express my remorse and guilt for the
22  crime I committed, Your Honor.  Your Honor, I have no one to
23  blame, Your Honor, but myself.  Your Honor, I have no excuse,
24  no excuse for the sense of greed to make me, made me commit
25  this terrible crime.  I'm sorry.  And, Your Honor, I take full

11

1  responsibility for this.
2          And also, Your Honor, if I may, I would like to take
3  the opportunity to apologize to my family, Your Honor,
4  especially my wife, my daughter.  Because of me, Your Honor,
5  I've caused them great, great difficulty both financially and
6  emotionally, Your Honor.
7          Also, I'd like to apologize to all my friends down in
8  Louisiana, Your Honor.  Thirty-five years ago, Your Honor, they
9  took me in as one of their own.  They treat me like their
10 family, Your Honor.  They supported me and loved me for the
11 last 35 years, and I disappointed them.  I'm sorry.
12         Also, Your Honor, I'd like to apologize to Ms. Kang
13 Yu Xin and Mr. Gregg Bergersen and their families.  Your Honor,
14 because of me, I put their families in a tremendous difficulty
15 and suffering.  I'm so sorry.
16         Your Honor, I know I'm going to show this remorse and
17 guilt for the rest of my life, Your Honor.  I just hope, Your
18 Honor, for the remaining of my life, Your Honor, if I have the
19 time and opportunity, I will do everything I can to win back
20 the trust of my friends, my family, and most of all, Your
21 Honor, I want to win back the trust of the society as well.
22         I thank you, Your Honor, to give me this opportunity
23 to speak.
24         THE COURT:  All right.  Mr. Kuo, the Court is going
25 to sentence you within the guideline range.  I don't think this

12

1  is a case at this time that calls for a departure.  I
2  understand there may in the future if you continue to fully
3  cooperate with the government be a Rule 35(b) motion.
4          The sentence will be at the low end of the guideline
5  range, which is 188 months in the custody of the Bureau of
6  Prisons, with credit for the time you've been in custody
7  against that sentence.
8          I've looked at that sentence, and I've taken into
9  consideration the argument about the nature of the classified
10 information, but in my experience on the bench, we've had a
11 fair number of espionage cases.  In the *Wispelaere* case, that
12 was a 15-year sentence, and there was a sole actor in that
13 case.  In the *Kim* case, it was a ten-year sentence, but Mr. Kim
14 acted alone.
15         This case has the aggravating factor that Ms. Kang
16 was implicated as well as the fact that Mr. Bergersen would not
17 have breached his loyalty and his trust had it not been for
18 Mr. Kuo.  So a sentence of 188 months in my view is completely
19 consistent with other similar sentences given the nature and
20 level of the classified information involved in this case.
21         I understand that you have requested designations
22 either to FCI Pensacola or Marianna in Florida or FCI Oakdale
23 in Louisiana.  I will grant those requests to the extent that
24 I'll have that recommendation in the judgment order.
25         When you complete the 188-month sentence, you'll be

13

1    on five years of supervised release.  The terms and conditions
2    of supervision are first of all your uniform good behavior.
3    That means, Mr. Kuo, that you cannot violate any federal,
4    state, or local laws while on supervision.
5             Do you understand that?
6             THE DEFENDANT:  Yes, Your Honor.
7             THE COURT:  Secondly, you have to follow all the
8    conditions of supervision that will be printed on the judgment
9    order and explained to you by the Probation Office.  Do you
10   understand that?
11            THE DEFENDANT:  Yes, Your Honor.
12            THE COURT:  Now, there are several special
13   conditions.  The first special condition is -- has the
14   forfeiture actually occurred at this point?  Has that money
15   been paid?
16            MR. ZEBLEY:  Not yet, Your Honor.  We have a consent
17   order of forfeiture to present to the Court today.
18            THE COURT:  All right.  You'll need to fully comply
19   with the, your forfeiture obligation.  Do you understand that?
20            THE DEFENDANT:  Yes, Your Honor.
21            THE COURT:  All right.  And that does mean that the
22   Probation Office is going to have a right to access any and all
23   of your financial records.  While on supervision, you cannot
24   engage in any financial actions -- that would be getting a new
25   line of credit, making any major purchase, etc. -- involving

1  over a thousand dollars without permission in advance from
2  Probation.
3         Do you understand that?
4         THE DEFENDANT:  Yes, Your Honor.
5         THE COURT:  If you have not already forfeited that
6  $40,000 and given the length of the time you'll be in prison
7  and the Bureau of Prisons' financial responsibility program, I
8  suspect the forfeiture may be accomplished, but if it has not
9  been, then as a condition of supervision, you are required to
10 make minimum monthly payments of $200 a month starting 60 days
11 from release towards satisfying the forfeiture.
12        Do you understand that?
13        THE DEFENDANT:  Yes, Your Honor.
14        THE COURT:  You will, as I said, have to turn over
15 access to any and all of your financial records to the
16 probation officer at his or her request, and if you should come
17 into any windfalls -- an inheritance, you win the lottery, tax
18 returns, etc. -- those monies must be reported to the probation
19 officer and must be first addressed towards the forfeiture.
20        Do you understand that?
21        THE DEFENDANT:  Yes, Your Honor.
22        THE COURT:  All right.  Second -- the next special
23 condition is I'm going to include paragraph 18, which is the
24 nondisclosure agreement that was part of your plea agreement
25 with the United States; paragraph 19 about the assignment of

15

1   any profits or proceeds from publicity; and paragraph 20, no
2   foreign contacts, those three elements of your plea agreement
3   are explicitly going to be included as conditions of
4   supervision.
5          Do you understand that?
6          THE DEFENDANT:  Yes, Your Honor.
7          THE COURT:  The Court finds no history of drug abuse,
8   so the mandatory drug testing is not imposed, but the Probation
9   Office can at any time demand a drug test from you, and you
10  must comply.  Do you understand that?
11         THE DEFENDANT:  Yes, Your Honor.
12         THE COURT:  Given the amount of forfeiture and your
13  overall financial situation, the Court finds that you are
14  unable to afford the costs of incarceration, supervision, or
15  any of the statutory fines, but the $100 special assessment is
16  imposed, and that's been paid, as I understand it, correct?
17         MR. HUNDLEY:  Correct, Your Honor.
18         THE COURT:  So that will be reported on the judgment
19  order.
20         Is there anything further from the United States as
21  to this sentencing order?
22         MR. ZEBLEY:  Nothing with respect to sentencing other
23  than to the extent the Court is able, if we could delay his
24  actual departure from the area for 60 days to complete the
25  dialogue with the United States government?

1  THE COURT: I think that's something you take up with
2 the U.S. Marshals Service, all right?
3  MR. ZEBLEY: Thank you.
4  THE COURT: There shouldn't be a problem.
5  Anything further, Mr. Hundley?
6  MR. HUNDLEY: If we could just have one minute, we do
7 have a consent order of forfeiture that Mr. Kuo needs to sign.
8  THE COURT: Do you have a pen?
9  MR. HUNDLEY: I just haven't had a chance to run
10 through it real quick with him.
11  THE COURT: All right.
12  MR. HUNDLEY: And I'll do that right now and have him
13 sign it.
14  Thank you, Your Honor.
15  THE COURT: If there's nothing further, the defendant
16 is remanded at this time. Thank you, counsel.
17  MR. ZEBLEY: Thank you, Your Honor.
18  (Which were all the proceedings
19  had at this time.)
20
21  CERTIFICATE OF THE REPORTER
22  I certify that the foregoing is a correct transcript of
23 the record of proceedings in the above-entitled matter.
24
25  _____
  /s/
  Anneliese J. Thomson